UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-11106
_____

ERGO SCIENCE, INC.,

                                        Plaintiff-Appellee,

                        versus

DONN D. MARTIN, ET AL.,

                                        Defendants,

ELITE THERAPEUTICS, INC.,

                                        Defendant-Appellant.

                        versus

HOMER WEST, ET AL.,

                                        Claimants-Appellees.

* * * * * * * * * *

_____

No. 94-11107
_____

IN RE:  Distribution of Funds Paid by Ergo
Science Incorporated Into Registry of
Court in No. 4:92-CV-917-A

ELITE THERAPEUTICS, INC.,

                                        Appellant.

_____

Appeals from the United States District Court for the
Northern District of Texas
_____

Before WIENER, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

The central issue in this appeal is whether a district court can rely upon statements made by counsel in open court disavowing any interest in an interpleaded fund. Because as a matter of federal civil procedure a district court can hold counsel to his word, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This controversy is rooted in a contract dispute between Ergo Science Incorporated ("Ergo") and appellant Elite Therapeutics, Inc. ("ETI"). Ergo holds the license for commercial development of certain medical technologies for the treatment of obesity and diabetes. ETI alleged that it purchased the right to sublicense these technologies. Ergo denied this allegation contending that no such sublicense existed. It is undisputed, however, that ETI paid Ergo $1,050,000; these funds were raised by ETI from investors. This appeal surrounds an interpleader action concerning these funds.

In 1992, Ergo sued ETI and its president Donn Martin seeking a declaratory judgment that no sublicense agreement existed. Ergo later amended its complaint to include, inter alia, an interpleader claim. Ergo alleged that it learned from certain investors that ETI and Martin solicited the funds paid to Ergo by falsely stating that ETI already had a sublicense for the technologies when in fact the parties were merely negotiating. In the interpleader action,

Ergo contended that some 500 individual investors, who were defrauded by ETI, were third-party claimants to the fund.

On October 28, 1994, the district court conducted a hearing on the interpleader claim. At this hearing, Ergo unequivocally waived any interest in the $1,050,000 which it paid into the registry of the court. Counsel for ETI, however, made conflicting statements regarding the funds. Counsel repeatedly stated that the money belonged to Ergo because of the alleged sublicense agreement. At one point, counsel stated that if there was no contract, the money belonged to ETI. However, after some discussion as to whether ETI had filed a claim to the fund the court directly asked ETI:

> If Ergo says I can give it to the investors, they wash their hands of it. You say your clients wash their hands of it, I give it to the investors. Then it's a matter of me sitting down with the investors and trying to work out a way to distribute it. Are we at that point?

Counsel for ETI answered: "Yes. That's fine with me, your Honor." After this colloquy, the court discussed with counsel for the investors-claimants possible procedures for pro rata relief.

Following this hearing, the district court ordered that Ergo, Martin, and ETI "all disclaimed any claim to or interest in the funds that Ergo has interpleaded into court in this action." Furthermore, the court found that "Martin and ETI acknowledged that they have made no claim to such funds; and, Ergo, Martin, and ETI all agreed that the court can order that the proper claimants to such funds are those parties to this action who . . . have asserted in this action claims to such funds." In addition, the court determined that "there is no just reason for delay in, and hereby directs, entry of final judgment as to the rulings made by the

3

court in this order." Simultaneously, the court issued a final judgment that Ergo, ETI and Martin had no interest in the interpleaded fund.

On December 21, 1994, ETI filed a Rule 60(b) motion for relief from the judgment on the grounds that the district court was mistaken when it concluded that ETI had waived all claims to the funds. The district court concluded the motion was meritless because, based upon the record of the hearing, ETI's counsel relinquished any claim to the funds in open court. This appeal ensued.

Prior to oral argument, Ergo and ETI settled their underlying dispute. Likewise, ETI and the bulk of the investors-claimants reached a settlement. However, one group of investors, the Barrett group, did not settle; there remains an on-going dispute between the Barrett investors and ETI. Consequently, this remaining controversy breathes life into the arguments originally raised by Ergo and the rest of the investors-claimants.

## JURISDICTION

As a threshold matter, our jurisdiction to entertain this appeal has been challenged on two grounds.[1] Initially, jurisdiction is challenged because ETI lacks standing since it

---

The jurisdictional issues were first raised by Ergo in a motion to dismiss the appeal. We carried this motion to the merits. The investors-claimants then adopted Ergo's argument by reference. The Barrett group has in turn adopted the arguments raised by the investors-claimants. Since Ergo has settled its dispute with ETI, its motion to dismiss for lack of jurisdiction is denied as moot. Nonetheless, we briefly address the jurisdictional issues initially raised by Ergo and later adopted by the Barrett group to determine our jurisdiction with respect to these remaining appellees.

disavowed any interest in the interpleaded funds. Secondly, appellees contend that the district court's orders are interlocutory. We reject both of these arguments.

As for standing, appellees rely on our recent opinion in Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc., 32 F.3d 205, 209-12 (5th Cir. 1994). Rohm, however, is not controlling. In Rohm, it was the plaintiff-stakeholder who sought to appeal. We dismissed the appeal because the stakeholder had unequivocally denied any interest in the fund, continued to disavow any interest on appeal, and sought merely to prevent some possible future indirect injury from the court's priority in distribution. The situation presented here is quite different. This dispute involves a potential claimant to the fund, not the stakeholder, and the very issue on appeal is whether ETI has waived its interest in the interpleaded funds or not. The district court's judgment decrees that ETI has no interest or right to the interpleaded funds. ETI, therefore, has standing to challenge this order because it is not faced with a hypothetical or indirect injury as in Rohm, but a real and immediate injury.

This court also has jurisdiction over the appeal because it involves a final judgment under Federal Rule of Civil Procedure 54(b). This rule provides that:

> When more than one claim for relief is presented . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

FED. R. CIV. P. 54(b). While as a general rule an order granting

5

interpleader is interlocutory, such an order is appealable provided the district court invokes Rule 54(b).  See New Amsterdam Casualty Co. v. United States, 272 F.2d 754, 756 (5th Cir. 1959); see also Diamond Shamrock Oil & Gas Corp. v. Commissioner of Revenues, 422 F.2d 532, 534 (8th Cir. 1970); Guerin v. Guerin, 239 F.2d 909, 913 (9th Cir. 1956); Republic of China v. American Express Co., 190 F.2d 334, 338-39 (2d Cir. 1951).[2]

In its order, the district court disposed of one claim and one party when it ordered that ETI had no interest in the interpleaded funds.  Furthermore, the district court complied with the Rule 54(b) requirements when it found no just reason for delay and directed entry of a final judgment.  Since the district court complied with Rule 54(b) and the order granting interpleader completely disposes of ETI's interest in the fund, this Court has jurisdiction to consider the merits of the appeal.

DISAVOWAL OF INTEREST IN FUND

The essence of ETI's argument is that the statements made by counsel do not rise to the level of a "waiver" of an interest in the interpleaded funds.[3]  ETI contends that its conditional

---

The commentators concur.  See 7 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1720, at 651-52 (1986) ("But because [a decision granting interpleader] leaves the claims to the stake before the court and prevents the entry of a final judgment embracing the entire action, the interpleader order is now considered nonappealable, unless the court is willing to direct the entry of a partial judgment under Rule 54(b).") (emphasis added); 3A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 22.14[6], at 22-148—22-149 (1995) ("Also interlocutory, in the absence of a Rule 54(b) determination, is an order granting interpleader . . . .") (first emphasis added).

ETI also contends that the district court implicitly and erroneously held that ETI was required to file a third-party claim

6

statements do not meet the standard of waiver under Texas law because the concession does not amount to an intentional relinquishment of a known right. See First Interstate Bank v. Interfund Corp., 924 F.2d 588, 595 (5th Cir. 1991) (describing Texas waiver law). Furthermore, because the district court failed to apply Texas waiver law, ETI posits that we must apply a de novo review.[4] We believe, however, that the issue is more one of estoppel rather than relinquishment of a known right.

Properly framed, the issue presented in this case is not one of application of Texas waiver law. Rather, the question is one of procedure in the federal courts: Can a federal district judge rely upon statements made by counsel in open court renouncing a specific claim? This question does not implicate Texas waiver law at all, but strikes at the very core of protecting the integrity of the judicial process and the discretion of the district court.

Viewed in this light, the issue is more akin to judicial estoppel.[5] The doctrine of judicial estoppel prevents a party from

---

to the interpleaded fund. ETI contends that since it was not named by Ergo as a third-party claimant, the district court's scheduling order requiring claims to be filed within a specific time period did not apply to it. However, based upon the district court's order denying ETI's Rule 60(b) motion, it is clear that the court relied on ETI's open-court renunciation of any interest in the fund, not its failure to file a claim.

[4]     ETI does not contend, and indeed would be hard-pressed to contend, that its counsel lacked the authority to waive its interest in the interpleaded funds at the pretrial hearing. See FED. R. CIV. P. 16(c) ("At least one of the attorneys for each party participating in any conference before trial shall have authority to enter into stipulations and to make admissions regarding all matters that the participants may reasonably anticipate may be discussed.").

We note that Texas law also embraces the doctrine of judicial

7

asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. <u>United States v. McCaskey</u>, 9 F.3d 368, 378 (5th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 1565 (1994).  We recognize the applicability of this doctrine in this circuit because of its laudable policy goals. The doctrine prevents internal inconsistency, precludes litigants from "playing fast and loose" with the courts, and prohibits parties from deliberately changing positions based upon the exigencies of the moment.  <u>Id.</u>

In this case, ETI's counsel made statements at a pretrial hearing that disclaim any interest in the interpleaded funds.  A similar situation was presented in <u>Veillon v. Exploration Servs., Inc.</u>, 876 F.2d 1197, 1199-1201 (5th Cir. 1989).  Following a maritime accident, Travelers Insurance Company deposited what it believed to be as the limits of its policy coverage into the court's registry.  Later, a dispute arose as to the amount of policy limits. Following settlement negotiations, Travelers agreed that it would not oppose withdrawal of the deposited funds by the injured plaintiff in exchange for summary judgment establishing the policy limit at a level favorable to Travelers.  <u>Veillon</u>, 876 F.2d at 1199.  At a pretrial hearing, the district court characterized the plaintiff's motion as one to dismiss as opposed to summary judgment.  Because dismissal would not resolve the coverage limit issue, counsel for Travelers balked.  <u>Id.</u> Nonetheless, after some discussion, the court asked: "Travelers has no further interest in

---

estoppel and distinguishes it from waiver.  <u>See</u> 34 Tᴇx. Jᴜʀ. 3ᴅ <u>Estoppel</u> §§ 5, 19 (1984).

those funds [in the court's registry]." To which counsel responded, "That's correct." Id. Despite having disavowed any interest in the funds in open court, Travelers later moved to withdraw the funds.[6] The district court denied the motion after reviewing the transcript of the earlier hearing. Id. at 1200. Travelers appealed arguing that counsel had not relinquished rights to the funds. We rejected this position and held counsel to its word noting that "when the district judge stated that Travelers had no further interest in the funds, [counsel] for Travelers responded, `That's correct.'" Id. at 1201. Furthermore, this Court rejected Travelers's argument that the transcript was somehow an inaccurate reflection of the statements made at the hearing. Id.

A review of the record from the pretrial hearing in this case yields the same result. Despite vacillations by ETI's counsel, a denouement occurs. The court directly asked counsel: "If Ergo says I can give it to the investors, they wash their hands of it. You say your clients wash their hands of it, I give it to the investors. Then it's a matter of me sitting down with the investors and trying to work out a way to distribute it. Are we at that point?" ETI's counsel replied: "Yes. That's fine with me, your Honor." Faced with this record, this is the same type of renunciation present in Veillon.

Still, ETI maintains that the district court misunderstood its

_____

This action was precipitated by the final judgment in the underlying injury claim where the district court dismissed the claims against the insureds.

9

comments. If there was a mistake, however, the procedural remedy is a Rule 60 motion for relief from judgment, as we counseled in Veillon. See id. ETI requested precisely this relief. The district court, however, denied the motion. It is well-settled that we must review a denial of a Rule 60(b) motion under an abuse-of-discretion standard. Government Fin. Servs. One Ltd. Partnership v. Peyton Place, Inc., 62 F.3d 767, 770 (5th Cir. 1995); Cooper v. Noble, 33 F.3d 540, 543 (5th Cir. 1994).

A review of the record, however, reveals no abuse of discretion. In its order denying the Rule 60(b) motion, the district court outlined the portions of the record upon which it relied. This included the exchange between the court and counsel where counsel consented to the distribution of the interpleaded funds to the investors. In addition, the district court's order recounts that this concession was followed by "lengthy discussions with counsel for the investors/claimants relative to procedures that might be followed in the allocation of the interpleaded funds between the investors/claimants." As the court noted, at no time during these discussions did ETI suggest in any way that the court's course of action was inappropriate. In fact, our review of the record also reveals that at the conclusion of the discussion with the investors, the court, speaking to pro se investors, stated: "Well, you've heard the discussion about persons who claim an entitlement to the $1,050,000. And apparently the main actors, Ergo and Mr. Martin and his company [ETI], have given up any claim to it. So it's to be divided up amongst the investors, and an effort is going to be made to have some third party work with the

10

attorneys for the investors in deciding on an appropriate way to divide that up." While the court made this unequivocal statement concerning the parties' renunciation of any interest in the fund and its intention to distribute it to the investors, counsel for ETI sat silently. Given these circumstances, the district court did not abuse its discretion in concluding that ETI disavowed its interest in the fund.

To be sure, ETI's counsel continues to maintain that it did not mean to renounce its interest in the funds. Counsel offers a potential reading of the colloquy with different emphasis illustrating the conditional nature of the statements. However, unlike counsel, we were not privy to the tone and inflection of the statements made before the district court; we must confine our review to a cold record. On the other hand, the district judge was engaged in the pretrial hearing. Unlike us, he heard counsel's remarks and concluded both at the hearing and on later review of the record that renunciation occurred. This conclusion is entitled to great weight. Faced with a burgeoning docket and with a complex commercial lawsuit at hand, a district judge must be able to winnow the issues for trial. This includes reliance on statements made by counsel in open court disavowing specific claims.

Whether this reliance is labelled as "waiver," "judicial estoppel," or "renunciation" is immaterial. What is clear is that the district court, as a matter of federal procedure, is entitled to rely on statements made by counsel in open court. When a later dispute arises as to the nature of the statements, litigants possess procedural remedies to correct mistakes. However, once

11

the district court concludes that no mistake has been made, such a conclusion must be given deference. That deference is not unfettered. We can review the record, as done in this case, for an abuse of discretion. In the absence of such abuse, the district court's conclusion must stand.

## CONCLUSION

Based upon our review of the record, the district court did not abuse its discretion in concluding that counsel for ETI disavowed any interest in the interpleaded funds. We AFFIRM.

EMILIO M. GARZA, Circuit Judge, concurs as to the judgment only.