David RIVERA, Plaintiff,

v.

Eric H. HOLDER, Jr., Attorney General, U.S. Department of Justice, Federal Bureau of Prisons, Defendant.

No. EP–09–CV–350–PRM.

United States District Court,
W.D. Texas,
El Paso Division.

Dec. 30, 2010.

Enrique Lopez, Law Office of Enrique Lopez, El Paso, TX, for Plaintiff.

Eduardo R. Castillo, Assistant United States Attorney, El Paso, TX, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON JUDICIAL ESTOPPEL

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Defendant Eric H. Holder, Jr.'s (Defendant) "Motion for Summary Judgment Based on Judicial Estoppel" (Docket No. 35) [hereinafter Motion], filed on December 7, 2010; Plaintiff David Rivera's (Plaintiff) "Response to Defendant's Motion for Summary Judgment Based on Judicial Estoppel" (Docket No. 38) [hereinafter Response], filed on December 22, 2010; and Defendant's "Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment Based on Judicial Estoppel" (Docket No. 39) [hereinafter Reply], filed on December 23, 2010 in the above-captioned cause. After due consideration, the Court

is of the opinion that Defendant's Motion should be granted for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Complaint

On September 24, 2009, Plaintiff David Rivera (Plaintiff) filed his "Complaint." Docket No. 1. Therein, Plaintiff represents that he is a Correctional Officer with the Federal Bureau of Prisons, Federal Correctional Institute in La Tuna, Texas, and claims that he was retaliated against because he assisted a co-worker in filing a complaint with the Equal Employment Opportunity Commission (EEOC). Compl. ¶ 11, 16.

Plaintiff identifies two specific instances of alleged retaliation. First, Plaintiff states that he was rated unfairly in one area[1] of his quarterly performance evaluation for the period ending on June 30, 2007. Id. ¶ 20. Plaintiff claims that he objected to this rating but failed to get it changed. Id. Second, Plaintiff claims he was unjustifiably placed on Absent Without Leave (AWOL) status for a trip he took to Virginia.

Plaintiff's AWOL status followed a series of communications that he had with supervising officers in June and July of 2007 in which he requested two weeks of unscheduled Annual Leave to attended a court proceeding in Virginia involving a property that he owned. Id. ¶ 22. Plaintiff recounts that he was initially denied the two-week request but was approved for the week of July 8–14. Id. ¶ 29. Plaintiff continued to seek an extension of this period and asked the union president

"to act of his behalf during [his] absence to arrange for the leave." Id. ¶ 28. While in Virginia, the union president allegedly informed him that one of Plaintiff's supervisors had authorized an extension of the leave for July 15 and 16. Id. ¶ 31.

Plaintiff then claims that, during his trip, his son suffered an injury and required hospitalization when a motel television fell on him. Id. ¶ 30. As a result, Plaintiff called a supervisor and requested Family Leave for July 17–19. Id. ¶ 32. Plaintiff claims that the supervisor "stated okay" and that, as a result, he "was under the impression [that] he would be covered for [leave] that second week as well." Id. ¶ 33.

On July 31, 2007, Plaintiff learned that he was placed on AWOL status for July 16–19 because he was not authorized for Family Leave, nor was his extended leave authorized for July 16, despite what he learned from the union president. Plaintiff claims that the decision to place him on AWOL status for 32 hours was done in retaliation for his actions as an EEOC representative. Id. ¶ 36.

Plaintiff alleges that Defendant's actions constitute a violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and asks the Court to award him compensatory damages for his "pain, suffering, emotional distress, humiliation and for any resulting physical and emotional damages, in the amount of $300,000.00." Id. ¶ 57.

### B. EEOC Complaint and Bankruptcy Proceedings

On August 29, 2007, Plaintiff filed his own formal complaint with the EEOC as a result of the aforementioned series of events.[2] Mot. Ex. A. Then, on June 20,

---

1. Plaintiff represents that this evaluated area was "his ability to communicate." Id.

2. Plaintiff's EEOC complaint states "I [a]m being discriminated and retaliated against for reporting and assisting an employee with an

EEO[C] [c]omplaint," and "I would like [a] correction on my [quarterly performance] evaluation and AWOL [status] with a written apology. I would like to be compensated monetarily for the harassment and retaliation

2008, while the EEOC claim was still pending, Plaintiff filed for bankruptcy with the U.S. Bankruptcy Court for the District of New Mexico. *Id.* Ex. B. However, in the section of the bankruptcy petition where Plaintiff was to list "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of the bankruptcy case," Plaintiff checked the box marked "None," and signed the petition under penalty of perjury. *Id.* Ex. B, at 31, 37.

As a result of this omission, Defendant argues that Plaintiff is judicially estopped from bringing the above-captioned case. Plaintiff's responds that he did not intentionally mislead the bankruptcy court when he "inadvertently did not disclose his pending EEO[C] complaint on the Voluntary Petition." Pl.'s Resp. 1. The following sections examine the merits of these arguments.

## II. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact exists only if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a motion for summary judgment, "[t]he moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by 'point[ing] out the absence of evidence supporting the

nonmoving party's case.'" *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 712 (5th Cir.1994) (quoting *Latimer v. Smithkline & French Labs.,* 919 F.2d 301, 303 (5th Cir.1990)). If the moving party has satisfied its initial burden, the nonmovant must then come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When a party requests that a court grant its motion for summary judgment, a court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). While a court will resolve factual controversies or disputes in the non-movant's favor, it must do so "only when there is an *actual* controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (emphasis added). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

When the moving party seeks summary judgment on a claim or defense where he does not bear the burden of proof, the moving party "should be able to obtain summary judgment simply by disproving the existence of any essential element of the opposing party's claim or affirmative defense." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). On claims where the nonmoving party will bear the burden of proof at trial, it may be unnecessary for the movant to introduce any evi-

and for the hardship of having 32 hours deducted from my pay without due process."

*Id.*

dence in order to prevail; rather "the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him." 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727 at 474 (3d ed.2008); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating that a motion for summary judgment may be granted in some cases "regardless of whether the moving party accompanies its summary judgment motion with affidavits").

## III. ANALYSIS

### A. Judicial Estoppel

 Judicial estoppel is a common law doctrine that prevents a party who has successfully established one position from adopting an inconsistent position in the same or subsequent proceedings. *See In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir.1999). The purpose of the doctrine is "to protect the integrity of the judicial process," rather than the litigants themselves. *Id.* (internal quotation marks omitted). "The doctrine is generally applied where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Id.* at 206 (quoting *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3rd Cir.1953)); *see also Ergo Science, Inc. v. Martin,* 73 F.3d 595, 598 (5th Cir.1996) (noting that judicial estoppel prevents litigants "from 'playing fast and loose' with the courts") (citation omitted).

For example, in *Jethroe v. Omnova Solutions,* the plaintiff filed a grievance with her union and then filed a complaint with the EEOC. 412 F.3d 598 (5th Cir.2005) While pursuing the claim with the EEOC, the plaintiff filed a bankruptcy petition.

On one of the forms, under penalty of perjury, she marked "X" in a column indicating that she had no "other contingent and unliquidated claims of [any] nature." *Id.* at 599. On another form, again under penalty of perjury, she indicated that she had no pending "suits and administrative proceedings." *Id.* Plaintiff then filed a Title VII lawsuit based on the same causes of action as the EEOC claim. *Id.* The district court held that the Title VII lawsuit was judicially estopped because the plaintiff failed to disclose her pending EEOC claim and potential lawsuit during the bankruptcy proceeding. *Id.* The Fifth Circuit affirmed the decision. *Id.* at 601.

In applying judicial estoppel, the Fifth Circuit has identified three key elements that must be present in order for the doctrine to apply: (1) the position of the party to be estopped is clearly inconsistent with its previous position; (2) that party must have convinced the court to accept the previous position; and (3) the party did not act inadvertently. *Jethroe,* 412 F.3d at 600 (citing *Coastal,* 179 F.3d at 206).

 The first two elements are clearly established in the present case. Plaintiff (1) expressly represented that he did not have any pending administrative claims and (2) the bankruptcy court accepted Plaintiff's position, evidenced by the fact that on September 30, 2008, Plaintiff was relieved of any obligation to repay the discharged debts. Mot. Exs. C, D.

Plaintiff claims, though, that his failure to disclose the EEOC complaint was inadvertent. Resp. 1–2. This argument, however, is unavailing.

#### 1. Inadvertence

Along with claiming inadvertence, Plaintiff blames the length of time between the filing of the EEOC claim and the bankruptcy petition (even though it was less

than a year), his lack of sophistication with bankruptcy proceedings, ineffective counsel, and the breadth of the EEOC claim (calling it "a minute claim") for his omission. Resp. 2–3. All of these excuses, however, are irrelevant.

■ The Fifth Circuit uses a two-prong analysis for determining "inadvertence." In bankruptcy cases, the failure to comply with a statutory disclosure duty is " 'inadvertent' only when, in general, the [party] either lacks knowledge of the undisclosed claim or has no motive for their concealment." *Coastal*, 179 F.3d at 210.

In *Coastal*, the debtor argued, *inter alia*, inexperience with bankruptcy statements, reliance on counsel, and that the omission in bankruptcy court was an oversight, but the Fifth Circuit found that these did not amount to "lack of knowledge" of the undisclosed claim. *Id.* at 212. Even if all of the excuses were true, the debtor still knew about the claim and the facts underlying the claim. Notably, the Fifth Circuit has also expressly denied the inclusion of "intent" in the determination of whether a claim may be estopped. *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 399 (5th Cir.2003) (discussing "detrimental reliance," "privity," and "intent," and concluding that "[n]one of these 'elements' are required [in] Fifth Circuit [judicial estoppel determinations]"); *see also Coastal*, 179 F.3d at 212 ("[A litigant's] lack of awareness of [a] statutory disclosure duty for its [legal claims] is not relevant.").

At the time Plaintiff filed his bankruptcy petition, he had already filed his EEOC claim. Even though Plaintiff may not have remembered the claim (and his vigilant pursuit of the claim through the administrative process suggests otherwise), the key is whether Plaintiff had "knowledge" of the claim. *See Jethroe*, 412 F.3d at 601 ("[T]o claim that [a] failure to disclose was inadvertent [a litigant] must show *not* that she was unaware that she had a duty to disclose her claims but that, at the time she filed her bankruptcy petition, she was unaware of the facts giving rise to them.") (emphasis added). The record is clear that, at the time Plaintiff filled out the bankruptcy petition, he had knowledge of the EEOC claim.

Finally, Plaintiff can only claim his omission was inadvertent if there was "no motive" for concealment. *Coastal*, 179 F.3d at 210. The Fifth Circuit has found that a motive exists when a litigant has an incentive to conceal claims from creditors. *See Jethroe*, 412 F.3d at 601 ("Jethroe had an incentive to conceal her claims from creditors. Although her bankruptcy confirmation plan required her to pay approximately $9,000 of her $9,300 in secured debt, it did not require her to pay any of her unsecured debt of $8,373."); *Coastal*, 179 F.3d at 213 (finding motive because the omitted claim's potential value may have affected the bankruptcy court's decision had it been disclosed). In this case, Plaintiff admits to being "financially distressed" and filing bankruptcy "in order to obtain relief from creditors." Resp. 1. He omitted a claim that he now claims entitles him to $300,000.00 in damages. This omission may well have affected his position with the bankruptcy court, and the Court is of the opinion that, based on the circuit case law, there was an incentive to conceal the claim.

## IV. CONCLUSION

Plaintiff omitted a claim in bankruptcy court, likely benefitted from the omission, and now seeks to bring the same claims in the present case. After due consideration, the Court is of the opinion that Plaintiff's claims are judicially estopped and dismisses the Complaint with prejudice.

Accordingly, **IT IS ORDERED** that Defendant Eric H. Holder, Jr.'s "Motion for

Summary Judgment Based on Judicial Estoppel" (Docket No. 35) is **GRANTED.**

**IT IS FURTHER ORDERED** that above-captioned cause is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that all pending motions, if any, are denied as moot.